# IMPORTANT NOTICE
## <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

# $\mathfrak{Supreme\ Court\ of\ Kentucky}$

## 2014-SC-000462-WC

ZAPPOS.COM                                                 APPELLANT

V.                  ON APPEAL FROM COURT OF APPEALS
CASE NO. 2013-CA-001320-WC
WORKERS' COMPENSATION NO. 11-93629

SONIA S. MULL;
HONORABLE JOHN COLEMAN,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD                 APPELLEES

## MEMORANDUM OPINION OF THE COURT

### <u>REVERSING</u>

Appellant, Zappos.com, appeals a Court of Appeals decision which reinstated an award of temporary total disability ("TTD") income benefits for Appellee, Sonia S. Mull. Zappos argues that the Court of Appeals, and previously the Administrative Law Judge ("ALJ"), misapplied KRS 342.0011(11)(a) by holding that Mull was entitled to TTD benefits for a period after she voluntarily chose to quit while she was under light duty restrictions. For the below stated reasons, we reverse the Court of Appeals.

Mull worked full time for a company called Travelex and part time for Zappos. She began her employment with Zappos in August 2010, working ten hour shifts on the weekend. Mull's job responsibilities required her to engage

in prolonged standing while retrieving boxes from a conveyor, scanning the boxes, and putting them into shipping boxes. Mull was trained to perform all tasks. The job was fast paced and repetitive. Mull stated that she often handled up to 300 boxes per hour.

At some time in January 2011, Mull began to notice numbness and stiffness in her hands. Specifically, on February 5, 2011, she recounted having difficulty lifting her right middle finger when her hand was in a closed fist. Mull continued to work hoping that the problems with her hands would improve.

Unfortunately, Mull did not improve and she sought treatment from her family physician, Dr. Dennis Allen Sparks, on March 4, 2011. Dr. Sparks believed the problem with Mull's hands was related to her work at Zappos. Mull reported the doctor's diagnosis to her manager, Sarah Bellah, the next day and requested a month off of work. Bellah declined the request and instead assigned Mull light duty work. The light duty work involved scanning packages.

Mull continued to work at Zappos performing the light duty work until May 15, 2011, when she quit. Mull testified that she quit, not because she could no longer perform the light duty tasks, but that she wanted to spend more time with her family.

Mull filed for workers' compensation on August 17, 2011, alleging she sustained a repetitive motion injury to her right middle finger during the scope of her employment with Zappos. The parties stipulated that Mull suffered a

work-related injury, but the appropriateness of TTD benefits for the period after she quit was contested. After a review of the evidence, the ALJ found that:

> [Mull] requests [TTD] benefits beginning on the date she left her employment with the defendant on May 15, 2011, but she continued in her concurrent employment as a currency exchange clerk. [Mull] agrees that she continued working for the employer at light duty through that date. [Mull] was evaluated by Dr. DuBou on November 22, 2011, at which time he noted her to not be at maximum medical improvement. Dr. McEldowney placed [Mull] at maximum medical improvement and placed her under restrictions on December 29, 2011. Temporary total disability is defined in KRS 342.0011(11)(a) as the condition of an employee who has not reached maximum medical improvement from an injury and has not reached a level of improvement which would permit a return to employment. Temporary total disability is a two pronged test and temporary total disability benefits are payable so long as: (1) maximum medical improvement has not been reached, and (2) the injury has not reached a level of improvement that would permit a return to employment. *Magellan Health v. Helms,* 140 S.W.3d 579 (Ky. App. 2004). Further, it would not be reasonable to terminate temporary total disability benefits for a claimant when he is released to perform minimal work, but not the type of work that was customary or that he was performing at the time of his injury. *Central Kentucky Steel v. Wise,* 19 S.W.3d 657 (Ky. 2000). A worker is entitled to temporary total disability during the performance of minimal work as long as the worker is unable to return to the employment performed at the time of injury. *See Double L Construction, Inc. v. Mitchell,* 182 S.W.3d 509 (Ky. 2006), wherein the Court noted that a worker is entitled to temporary total disability benefits if a work related injury results in a temporary inability to perform the job in which it occurred. If the injury also causes an inability to perform a concurrent job of which the employer has knowledge, income benefits are based on the wages of both employments by operation of KRS 342.140(5). If the injury does not cause an inability to perform a concurrent job, KRS 342.140(5) is inapplicable and income benefits are based solely on the wages from the job in which the injury occurred. Therefore, [Mull] is entitled to temporary total disability benefits from May 15, 2011[,] through December 29, 2011.

Zappos filed a petition for reconsideration. In denying the petition, the ALJ stated:

3

The ALJ sympathizes with [Zappos's] arguments on temporary total disability. However, the ALJ believes the law provides that temporary total disability benefits are payable so long as maximum medical improvement has not been reached and the injury has not reached a level of improvement that would permit a return to regular and customary employment. In this instance, [Mull] was not placed at maximum medical improvement until December 29, 2011, and was on light duty work restrictions. Therefore, she met the two-prong test and her ability to do light duty work is irrelevant.

Zappos appealed to the Board which reversed the ALJ on the granting of

TTD benefits. The Board held:

Here, Zappos accommodated Mull's restrictions with a scanning position, which she testified was a normal part of her employment prior to the injury. Zappos correctly notes Mull acknowledges she was capable of continuing to perform the light duty work but ceased her employment with Zappos for personal reasons completely unrelated to the work injury. Nothing in the record establishes the light duty work constituted 'minimal' work and she worked regular shifts while under restrictions. She was also capable of performing, and continued to perform for more than one year post-injury, her primary fulltime employment with Travelex. Given Mull was capable of performing work for which she had training and experience, and voluntarily ceased her employment for reasons unrelated to her injury or the job duties, substantial evidence does not support the award of TTD benefits and we therefore reverse.

Mull subsequently appealed to the Court of Appeals, which reversed the

Board and reinstated the award of TTD benefits. The Court of Appeals held

that the phrase "return to employment," as found in KRS 342.0011(11)(a), "was

only achieved if the employee can perform the entirety of her pre-injury

employment duties within the confines of the post-injury medical restrictions."

Thus, since Mull no longer retained the physical ability to perform any

activities requiring gripping and grabbing with her right hand, and her pre-

4

injury employment required such tasks, the Court of Appeals held she was entitled to TTD benefits. We disagree, and reverse the Court of Appeals.

The Board's review in this matter was limited to determining whether the evidence is sufficient to support the ALJ's findings, or if the evidence compels a different result. *W. Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687 (Ky. 1992). Further, the function of the Court of Appeals is to "correct the Board only where the Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Id.* at 687-88. Finally, review by this Court "is to address new or novel questions of statutory construction, or to reconsider precedent when such appears necessary, or to review a question of constitutional magnitude." *Id.* The ALJ, as fact-finder, has the sole discretion to judge the credibility of testimony and weight of evidence. *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418 (Ky. 1985).

As stated above, pursuant to KRS 342.0011(11)(a), in order for a claimant to be entitled to TTD benefits, she must satisfy a two-prong test: (1) she must not have reached MMI; and (2) she must not have reached a level of improvement that would permit her return to employment. *Double L Constr., Inc. v. Mitchell*, 182 S.W.3d 509, 513 (Ky. 2005). *Wise* stands for the proposition that TTD benefits for a claimant should not be terminated just because she is released to perform minimal work if it is not the type of work that was customary or that she was performing at the time of his injury. 19 S.W.3d at 657. However, "*Wise* does not 'stand for the principle that workers

5

who are unable to perform their customary work after an injury are always entitled to TTD.'" *Livingood v. Transfreight, LLC,* ___ S.W.3d ___ (Ky. 2015). Accordingly, the ALJ must analyze the evidence in the record and determine whether the light duty work assigned to the claimant is not minimal and is work that she would have performed before the work-related injury.

In *Livingood,* the claimant, a forklift driver, could not drive a forklift due to his light duty work restrictions. Instead, while on light duty restrictions he changed forklift batteries, monitored bathrooms for vandalism, and checked to make sure freight was correctly placed around the facility. The ALJ determined that since Livingood had performed those tasks before, and the work was not a make-work project, he had returned to employment and was not entitled to TTD benefits. Id. at ___. The ALJ's findings were affirmed by this Court.

In this matter, Mull satisfied the first prong of the TTD benefit test because she had not reached MMI. But, the ALJ did not perform an in depth analysis of the second requirement, whether the light duty work Mull performed was a return to her regular and customary employment. However, despite the lack of an in depth analysis the facts of this matter are relatively clear, and we must agree with the Board that substantial evidence does not support the ALJ's award of TTD.

Prior to her injury, Mull's job tasks included retrieving a product, scanning it, and placing it in a shipping box. Mull was trained in all of these tasks. After the injury, Mull was restricted to scanning items. Mull testified that scanning was a normal part of her pre-injury employment. The light duty

6

work is not a significant diversion from her original employment and there is no indication the work was minimal. Mull also received the same hourly wage. Mull returned to her regular and customary employment at Zappos and she does not satisfy the second requirement to receive TTD benefits.

Additionally, we note that Mull admitted she voluntarily quit working for Zappos because she wanted to spend more time with her family and not because she was unable to continue performing light duty work. The purpose of TTD benefits is to cover a period of time in which an employee cannot work or can only perform minimal work. We acknowledge that a claimant can receive TTD for an injury sustained at one job while able to continue working a second job. *Double L Construction,* 182 S.W.3d at 514. But, TTD benefits should not be awarded to a claimant who chooses not to work for reasons unrelated to her work-related disability. Accordingly, the record does not support the ALJ's grant of TTD benefits to Mull.

Thus, for the above stated reasons, we reverse the decision of the Court of Appeals.

All sitting. Minton, C.J.; Abramson, Barber, Cunningham, Keller, and Noble, JJ., concur. Venters, J., dissents.

COUNSEL FOR APPELLANT,
ZAPPOS.COM:

Donald Cameron Walton, III
Scott Ellis Burroughs


COUNSEL FOR APPELLEE,
SONIA S. MULL:

James Delano Howes